# ESI PROTOCOL

**I. PURPOSE AND SCOPE**

### A.  General

This Protocol shall govern the parties' productions in response to any request for production served in this action under the Federal Rule of Civil Procedure 34 unless the Parties agree in writing to change them.

### B.  Limitation and Non-Waiver

Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party producing documents and ESI ("Producing Party") or a Party requesting the production of documents and ESI ("Requesting Party"). This Protocol does not limit the temporal or substantive scope of discovery. Nothing in this Protocol is intended to affect the right of any party to object to a request for production or to operate as a waiver of any party's right to promulgate, object to, or seek relief from a request for discovery.

### C.  Variations

In light of the varying and disparate data systems and architectures employed by the Parties, variations from this Protocol may be required. In the event that any Party identifies a circumstance where application of this Protocol is not technologically possible or practicable, the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Protocol.

## II. PRODUCTION GENERALLY

### A.  Bates Numbering

The Parties shall assign unique Bates numbers to produced documents. For files produced as TIFF images, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically burned onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production**.**

### B.  Logical Unitizing

"Logically unitized" means that all pages that belong together as a document, and only those pages, are produced as one document, with relationships such as parent and child attachments maintained. The Parties will undertake reasonable efforts to, or have their vendors, logically unitize documents correctly, and will commit to address situations of improperly unitized documents.

### C.  Searchable Text Files

For each document produced, a single text file shall be provided. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces.

Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file shall be created using Optical Character Recognition ("OCR") and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 text format.

If necessary due to the absence of extractable electronic text, OCR shall be performed to achieve the highest quality text practicable, including by enabling settings for "auto-deskewing" and "auto-rotation." OCR text files shall be provided as a single text file for each document, not one text file per page. To the extent a document is redacted, OCR text files for such a document shall not contain text for redacted portions.

### D.  Color

Upon written request by the Requesting Party, the Producing Party shall take good faith measures to honor requests to produce color images where the Requesting Party believes in good faith that color is important to interpret the document. The Parties agree to meet and confer concerning any disputes over such requests.

### E.  Custodian Descriptions

Custodians should be identified using the convention "last name_first name." Entity/departmental custodians should be identified with a description of the entity or department. A Producing Party shall use a uniform description of a particular custodian across productions.

### F.  Load Files

Each production shall be accompanied by a delimited-load file in .DAT format that establishes the proper document breaks and maintains the parent/child relationships (BegAttach and EndAttach). The load file shall use the delimiters identified below:

| Value | Character | ASCII Number |
|-------|-----------|--------------|
| Column | ¶ | 020 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value | ; | 059 |
| Nested Value | \ | 092 |

The load file should be accompanied by an Opticon (.OPT) image cross-reference file that references one Bates number per line.

### G. Redactions

In situations where redaction of information is required, such redactions must be made in a way that ensures the integrity of the remaining text is preserved for OCR (e.g., redactions must not obscure non-redacted text). Any redactions must be clearly visible on the face of the produced document (e.g., the Parties should not use white boxes to make redactions on documents with a white background) and OCR searchable (e.g., labeled "Redacted"). Documents that contain redactions, including any associated family members, will be produced in single-page TIFF format (300 DPI resolution) with corresponding document-level OCR text for the remainder of the document and a delimited DAT file containing the metadata fields outlined in Appendix 1 to the extent that such metadata fields are not part of the redaction.

### H. Transmission

The Parties will use FTP transfer to transmit productions to the Receiving Party's counsel of record and any staff they designate to receive productions. Each FTP transfer shall be labelled with the name of the Producing Party, production date, media volume name, and Bates number range(s).

### I. Encryption

Productions may be encrypted using WinZip or PKWare. If encrypted by a password, the password will be transmitted contemporaneously with the production but under separate cover.

### III. PRODUCTION OF HARD COPY DOCUMENTS

#### A. Scanned TIFFs

Hard copy documents should be scanned and produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number with a ".tif" extension. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers and redactions should be burned into the TIFF image files. The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business.

#### B. Unitizing Scanned Documents

When scanning hard copy document, distinct documents shall not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized). Hard copy documents stored in a binder, folder, or similar container should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container.

#### C. Data Fields

The documents should be produced with a delimited-load file that includes at least the ten fields designed in Appendix 1 as applying to hard copy documents.

### IV. IDENTIFICATION AND COLLECTION OF ESI

#### A. Sources, Search Methods, and Timing

The Parties shall meet and confer in good faith in an effort to agree upon: (a) sources from which documents and ESI will be collected for review and production; (b) search methods and terms or other filtering or categorization to be applied; and (c) timeframes for collection and review of documents and ESI. These discussions should begin promptly after service of responses and objections to requests for production and should continue as necessary to address issues that arise in the course of discovery. If good faith negotiations do not resolve all ESI questions, the parties will bring any remaining disputes to the Court for resolution.

### B. Filtering and Culling

The Parties agree to the following approaches to filtering or culling of ESI;

#### 1. De-duplication

The Parties shall use commercially acceptable methods (e.g., MD5 or SHA-1 hash values) to identify duplicate ESI and globally de- duplicate ESI. The Parties may also, at each Party's option, use commercially acceptable methods of e-mail thread suppression. The metadata provided by the Parties for the produced version of each document withheld as a duplicate, shall include an "All Custodians" field, identifying all custodians who possessed exact copies of the document. The Parties will not de-duplicate loose electronic documents against email attachments. The Parties will not treat a document containing handwritten notes, highlighting, or any other markings as a duplicate of a non-marked or annotated version of the same document.

#### 2. De-NISTing

Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

#### 3. Relevant Time Frame/Date

The Parties may limit processing of Documents to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

### C. Technologies

To the extent a Party chooses to search and review using a technology or methodology other than search terms (including, for instance, predictive coding), that Party shall disclose its intent to use that technology and the name of the review tool.

### V. **PRODUCTION OF ESI**

Compliance with the procedures set forth below shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

### A. Form of Production

Except as otherwise provided, production of all non-redacted ESI shall be produced as single-page, Group IV, 300 DPI TIFFs.

### B. Attachments.

Attachments must be mapped to their parent by the Attachment Range. If a parent email or one of its attachments is produced, all members of its family, except for privileged documents, and associated text and metadata, must be produced.

### C. Hidden Data.

The Parties shall process productions in a manner to ensure that the all information, to the extent it exists in a document being produced in TIFF image format, is visible, including track changes (absent special circumstances, the TIFF images should show all track changes in markup form) and comments (these should be visible on the TIFF images of the documents).

### D.  Native Files

The Parties will produce in native format spreadsheets, delimited text files, photographs, audio, and video. Native files will be produced in a separate folder on the production media. The load file shall contain a field that identifies the file path of the native file corresponding to each document. For non-redacted native files, the TIFF image shall be a one-page placeholder that shows the name of the native file and a unique Bates number.

### E.  Databases and Structured Data

ESI in commercial or proprietary databases shall be produced in an existing and reasonably usable, delimited report format (e.g., Excel or CSV) when it is practicable to do so. Else, the Parties shall meet and confer to attempt to identify a mutually agreeable form of production based on the specific needs and the content and format of data within such structured data source.

### F.  Metadata.

With each produced ESI file, the Parties must produce each of the metadata fields described in Appendix 1 (to the extent available and technically achievable). Nothing in this stipulation requires a Party to manually populate a metadata field in Appendix 1 (other than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that the Parties agree to comply with reasonable requests for metadata that cannot be extracted from a document. For the avoidance of doubt, nothing in this ESI Protocol shall act as a waiver of any objections that may exist to the production of such data.

## VI. PRIVILEGE LOGS

With each production, Producing Party shall supply a log of the documents withheld or redacted under a claim of privilege and/or work product with sufficient information to allow the Receiving Party to understand the basis for the claim.

Communications involving litigation counsel that post-date the issuance of the letters of determination need not be placed on a privilege log.

Dated: _____

**APPENDIX 1**

| Field name | Field Description | Field Type | Field Value | Hard Copy |
|---|---|---|---|---|
| CUSTODIAN | Custodian(s)/Source(s) - format: Last, First or ABC Dept. | Text | 160 | x |
| AUTHOR | Creator of the document | Text | 500 | |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | x |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | x |
| PGCOUNT | Page Count | Number | 10 | x |
| GROUPID | Contains the Group Identifier for the family, in order to group e-mails with their attachments | Text | 60 | |
| BEGATTACH | Start Bates number of parent document in attachment range | Text | 60 | x |
| ENDATTACH | End Bates number of last attachment in attachment range | Text | 60 | x |
| REDACTIONS | Identifies whether the document contains redactions. | Boolean | 10 | x |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other. If using Other, please specify what type after Other | Text | 60 | x |
| FROM | Author - format: Last name, First name | Text | 160 | |
| TO | Recipient- format: Last name, First name | Text – semicolon delimited | Unlimited | |
| CC | Carbon Copy Recipients - format: Last name, First name | Text – semicolon delimited | Unlimited | |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name | Text – semicolon delimited | Unlimited | |
| SUBJECT | Subject/Document Title | Text | Unlimited | |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | x |
| DATE TIME SENT | Date Sent (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | |

| DATE TIME CRTD | Date Created (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | |
|---|---|---|---|---|
| DATE TIME MOD | Date Last Modified (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | |
| DATE TIME ACCD | Date Accessed (Use Time Zone of Collection Locality) | Date and Time | MM/DD/YYYY HH:MM:SS | |
| FILE SIZE | Native File Size in bytes | Number | 10 | |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | |
| FILEPATH | Data's original source full folder path | Text | Unlimited | |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | |
| FOLDER ID | Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | x |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | |